UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VINCENT FARMS, INC., an Idaho Corporation<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SYGENTA SEEDS, LLC,<br><br>　　　　Defendant. | Case No. 1:17-cv-00338-EJL-CWD<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are Syngenta Seed, LLC's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer") (Dkt. 6); Plaintiff's Motion to Strike Declaration of Mark Smith in Support of Defendant Syngenta Seeds, LLC's Motion to Transfer Pursuant to 28 U.S.C. §1404(a) ("Motion to Strike Smith Declaration") (Dkt. 10); and Plaintiff's Motion to Strike Declaration of Jose "Joe" Bengochea in Support of Defendant Syngenta Seeds, LLC's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Motion to Strike Bengochea Declaration") (Dkt. 14). These motions are now ripe for decision. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before the Court without oral argument.

MEMORANDUM DECISION AND ORDER- 1

## FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2017, Plaintiff Vincent Farms, Inc. ("Vincent Farms") initiated these proceedings by filing a lawsuit against Defendant Sygenta Seeds, LLC ("Sygenta") in the Fifth Judicial District of Idaho, Twin Falls County. (Dkt. 1-1, Ex. 1, Complaint.) Syngenta then filed a timely Notice of Removal to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. 1.)

Plaintiff Vincent Farms is an Idaho corporation with its principal place of business in Idaho. (Dkt. 1-1.)[1] Vincent Farms is engaged in farming operations in Twin Falls County, Idaho. Defendant Syngenta is a Delaware Limited Liability Company registered to do business in Idaho with its principal place of business in Minnesota.

Vincent Farms raised Sugar Hart seed peas for Syngenta during the 2016 crop year pursuant to a valid and existing contract between the parties ("Contract"). The Contract required that the Sugar Hart snap peas raised by Vincent Farms satisfy a germination percentage requirement of 85%.

Vincent Farms alleges that it complied with the terms of the Contract by raising the seed peas and delivering them to Syngenta with a germination percentage rate of 87%. Nevertheless, Syngenta rejected the delivery on the basis that the seed peas did not satisfy the 85% germination requirement.

---

[1] All facts contained herein are based on the allegations in the Complaint unless otherwise stated.

MEMORANDUM DECISION AND ORDER- 2

Vincent Farms claims that Syngenta breached the Contract by refusing to accept and pay for the Sugar Hart snap peas. Vincent Farms further claims that Syngenta was negligent in its performance of its duty to prepare the Sugar Hart seed peas for testing. Vincent Farms seeks $283,006.08 in economic damages plus prejudgment interest and attorneys fees.

On August 30, 2017, Syngenta filed its Motion to Transfer premised on a forum selection clause it contends is contained in the Contract. (Dkt. 6.) In support of the Motion, Syngenta proffered the Declaration from Mark Smith, Syngenta's litigation counsel. (Dkt. 6-1). Attached to the Declaration are two documents that Mr. Smith attests to represent the parties' written Contract: (1) a "Production Services Agreement" dated March 1, 2016 and (2) a "Schedule of Supplemental Terms and Conditions for Peas and Green Bean Seed Production" dated March 15, 2016 ("Schedule of Supplemental Terms.") (Dkt. 6-2.)

On September 20, 2017 Vincent Farms filed its responsive brief in opposition to the Motion to Transfer (Dkt. 11), the Declaration of John C. Peterson (Dkt. 11-1), and a Motion to Strike (Dkt. 10). Vincent Farms argues that Syngenta's Motion to Transfer should be denied because it is based on the existence of a forum selection clause that is contained in a document that Syngenta has not proven to be part of the Contract. (Dkt. 11). Further, Vincent Farms' counsel, John C. Peterson attests that, before filing this lawsuit, his own personal knowledge as to what constituted the parties' Contract was limited to the Schedule of Supplemental Terms (Dkt. 11-1, ¶ 4.) According to Mr. Peterson, it was only after he filed the lawsuit that he learned of the existence of the Production Services Agreement. (Dkt. 11-1, ¶¶5-6.)

As a basis for the Motion to Strike Smith Declaration, Vincent Farms argues that the documents attached to that declaration are hearsay and defense counsel, Mark Smith, lacks personal knowledge to authenticate them properly. (Dkt. 11). In reply, Syngenta proffers the Declaration of Jose "Joe" Bengochea. (Dkt. 12- 2). Mr. Bengochea attests that he was a field representative for Syngenta at the time the Contract was executed and has personal knowledge of the written documents that constitute the parties' agreement. (Dkt. 12-2, ¶1-2). Mr. Bengochea further attests that he witnessed Mr. Roger Vincent sign both the Production Services Agreement and the Schedule of Supplemental Terms. (Dkt. 12-2, ¶ 2).

In addition, Syngenta requested that the Court take Judicial Notice of Vincent Farms's 2016 Annual Report filed with the Idaho Secretary of State. (Dkt. 12-3.) In that annual Report, Mr. Vincent is identified as the President and Registered Agent for Vincent Farms. (Dkt. 12-3.)

Vincent Farms filed a Motion to Strike Bengochea Declaration solely on the basis that the Bengochea Declaration is untimely. (Dkt. 14). Vincent Farms argues that the Declaration should have been filed and served at the same time as the motion.

## MOTIONS TO STRIKE

Syngenta has set forth the declarations of Mr. Smith and Mr. Bengochea in an effort to create a record regarding the existence of two written agreements that constitute the parties' Contract. Vincent Farms seeks to strike these declarations but also offers an affidavit from counsel with the same two documents attached thereto. For the reasons set forth below, the Court denies both motions to strike.

MEMORANDUM DECISION AND ORDER- 4

**1.     Motion to Strike Smith Declaration is Denied.**

Vincent Farms argues that the Smith Declaration should be stricken because the documents attached are hearsay and also that counsel lacked personal knowledge to authenticate the documents. In response, Syngenta both argued that the Motion to Strike is improper and provided a second declaration from one of its employees who witnessed Mr. Vincent sign the documents in question.

First, contracts do not constitute hearsay. "Hearsay" is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Civ. P. 801(c). "[O]ut of court statements that are offered as evidence of legally operative verbal conduct are not hearsay. They are considered 'verbal acts.'" *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (citing *Stuart v. UNUM Life Ins. Co. of America,* 217 F.3d 1145, 1154 (9th Cir. 2000) (insurance policy); *United States v. Arteaga,* 117 F.3d 388, 395–98 (9th Cir. 1997) (money wire transfer forms)). Because a contract is "a legally operative document that defines the rights and liabilities of the parties in this case," it is excluded from the definition of hearsay. *See Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d at 1154 (citing *United States v. Bellucci,* 995 F.2d 157, 161 (9th Cir.1993); *United States v. Rubier,* 651 F.2d 628, 630 (9th Cir. 1981)).

Second, Vincent Farms suggests that Mr. Smith cannot authenticate the documents attached to the declaration because he lacks personal knowledge regarding the creation and execution of the agreements. In response, Syngenta offered the declaration of Mr.

MEMORANDUM DECISION AND ORDER- 5

Bengochea who does have personal knowledge of the documents. In addition, Vincent Farms' counsel submitted the same documents in his own declaration. In short, all three declarations contain copies of the same two documents.

Under the circumstances presented here, the Court denies the Motion to Strike Smith Declaration. Vincent Farms has not set forth any direct evidence to challenge the authenticity, existence, validity or enforceability of the two agreements and Syngenta addressed any issues with authentication through the Bengochea Declaration, discussed below.

**2.     Motion to Strike Bengochea Declaration is Denied.**

Vincent Farms argues that the Bengochea Declaration should be stricken as untimely. The Court disagrees.

Federal Rule of Civil Procedure 6(c)(2) states that "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). Nevertheless, evidence submitted on reply in response to arguments raised in an opposition is not considered "new" evidence. *See Terrell v. Contra Costa County*, 232 Fed. Appx. 626, 629 n. 2 (9th Cir. 2007); *see also Zkey Investments, LLC v. Facebook Inc.,* 225 F.Supp.3d 1147, 1158 (C.D. Cal. 2016) ("where evidence is 'submitted in direct response to proof adduced in opposition to a motion, it is not 'new.'")

The Bengochea Declaration is a timely response to Vincent Farms' opposition. Vincent Farms questioned the authenticity of the documents attached to counsel's declaration and Syngenta responded with an additional declaration authenticating the same documents. Accordingly, Plaintiff's Motion to Strike Bengochea Declaration is denied.

MEMORANDUM DECISION AND ORDER- 6

## MOTION TO TRANSFER

Syngenta seeks a transfer of venue to the United States District Court for the District of Minnesota pursuant 28 U.S.C. § 1404(a) and the parties' forum selection clause contained in the March 1, 2016 Production Services Agreement. As explained more fully below, the Court grants the motion.

Pursuant to 28 U.S.C. § 1404(a), the Court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which the parties have consented" provided such transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). "Section 1404(a) is . . . a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* at 580.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (quoting *Van Dusen v. Barrack*, 276 U.S. 612, 622 (1964)). The purpose of the rule is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*, 276 U.S. at 616 (internal quotations omitted).

As discussed more fully below, the parties have a valid forum selection clause and it governs this dispute.

MEMORANDUM DECISION AND ORDER- 7

**1.     The Parties' Contract Includes a Valid and Enforceable Forum Selection Clause.**

Syngenta argues that Plaintiff's breach of contract and negligence claims explicitly arise from the Production Services Agreement, which fully incorporates the Schedule of Supplemental Terms. In response, Vincent Farms argues that Syngenta has not shown the Production Services Agreement is legally binding between Vincent Farms and Syngenta.

The Court finds that the parties' Contract includes a valid and enforceable forum selection clause. More specifically and for the purposes of the Motion to Transfer only, the Court finds the Schedule of Supplemental Terms together with the Production Services Agreement constitute a single agreement and the written embodiment of the parties' Contract.

First, the Production Services Agreement provides for the following in terms of price and payment: "Syngenta shall pay Producer for Services as set forth in the Schedule." (Dkt. 12-2, ¶ 2.) The only Schedule in the record comes from the Schedule of Supplemental Terms.

Second, the Production Services Agreement also specifically provides that the "agreement may be executed in counterparts, and such counterparts will collectively constitute a single agreement." (Dkt. 22-2, ¶ 12.20.) The Schedule of Supplemental terms is a logical counterpart to the Production Services Agreement.

Third, the Schedule of Supplemental Terms states that "[t]he following supplemental terms and conditions to the Production Services Agreement dated 03-15-2016 (the "Agreement") are hereby incorporated into the Agreement as of the date signed

MEMORANDUM DECISION AND ORDER- 8

by Syngenta." (Dkt. 12-2.) While the date is somewhat problematic, the only Production Services Agreement in the record is the March 1, 2016 Production Services Agreement with the forum selection clause at issue.

In short, reading the two documents together, along with the record as a whole, the Court finds the Contract unambiguously includes both the Production Services Agreement as well as the Schedule of Supplemental Terms. Moreover, Vincent Farms' two central arguments against finding the Production Services Agreement enforceable are simply not compelling.

First, Vincent Farms specifically takes issue with the fact that the Production Services Agreement is dated March 1, 2016, rather than March 15, 2016 as set forth in the Schedule of Supplemental Terms. However, Mr. Bengoechea, a field representative for Syngenta and Sygenta's primary contact with Vincent Farms, explained that his meeting with Roger Vincent to sign the Production Services Agreement and the Schedule of Supplemental Terms was originally scheduled for March 1, 2016. (Dkt. 12-2, Bengoechea Declaration, ¶ 2, 3.) Mr. Bengoechea provided that when the meeting was moved to March 15, 2016 the date was not corrected on the Production Services Agreement. (Dkt. 12-2, Bengoechea Declaration, ¶ 2, 3.)

Mr. Bengoechea further stated that he was present during the meeting and witnessed Mr. Vincent sign both the Production Services Agreement and the Schedule of Supplemental Terms on March 15, 2016 and the Production Services Agreement provided in the record is the only Production Services Agreement between Syngenta and Vincent Farms. (Dkt. 12-2, Bengoechea Declaration, ¶ 3.)

MEMORANDUM DECISION AND ORDER- 9

The explanation from the Bengochea Declaration is reasonable on its face and there are no other facts in the record to rebut it. Accordingly, the Court finds the different dates are simply the result of a scheduling change and typographical error.

Second, Vincent Farms also argues that the Production Services Agreement is between Syngenta and Producer Roger Vincent, whereas the Schedule of Supplemental Terms is between Syngenta and Producer Vincent Farms. (Dkts. 11; 11-1; Ex. A, B.) However, Roger Vincent is the President and registered agent of Vincent Farms. (Dkt. 12.) Additionally, both contracts provide for the same contact phone number and mailing address. (Dkt. 11-1, Ex. A, B; 12-2, Ex. A, B.) This phone number and mailing address is the same contact information for Vincent Farms provided to the State of Idaho's Secretary of State on behalf of Vincent Farms' President Roger Vincent. (Dkt. 12-3, Ex. 1.)

In short, the record suggests that Mr. Vincent signed the Production Services Agreement in his capacity as President of Vincent Farms. In addition, Mr. Vincent signed the Supplemental Schedule of Terms as President of Vincent Farms. There is no other explanation for his signature in the record.

In sum, this Court is not persuaded by Vincent Farms' arguments. The record is clear: the parties have a valid and enforceable forum selection clause set forth in the Production Services Agreement and both the Production Services Agreement and the Supplemental Schedule of Terms, together, constitute the parties' Contract.

**2.    The Forum Selection Clause Governs This Dispute.**

The "proper application of § 1404(a) requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine,* 134 S.Ct. at

MEMORANDUM DECISION AND ORDER- 10

575 (quoting *Stewart Organization, Inc.*, 487 U.S. at 33). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case specified in that clause" unless the non-moving party shows "extraordinary circumstances unrelated to the convenience of the parties." *Id.*

The existence of a valid forum selection clause changes the typical 1404(a) analysis in three ways. *Atlantic Marine*, 134 S.Ct. at 581. "First, the plaintiff's choice of forum merits no weight," instead it bears the "burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 581-82. Second, the Court "should not consider arguments about the parties' private interests." *Id.* at 582. Rather, "a district court may consider arguments about public-interest factors only" and "those factors will rarely defeat a transfer motion." *Id*. "Third, when a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules– a factor that in some circumstances may affect public-interest considerations." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

### A. *Plaintiffs' Claims Arise out of and Relate to the Production Services Agreement.*

The Ninth Circuit has held that "because enforcement of a forum selection clause necessarily entails interpretation of the clause before it can be enforced, federal law . . . applies to the interpretation of forum selection clauses." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The Ninth Circuit has also held that the

MEMORANDUM DECISION AND ORDER- 11

scope of a forum selection clause is not limited to contract claims, but can encompass tort or statutory claims that arise out of the contract. *See Manetti-Farrow*, 858 F.2d at 514.

Vincent Farms' Complaint contains allegations of breach of contract, both express and implied, and negligence against Syngenta. (Dkt. 1-1.) Syngenta contends that both of these claims arise out of the Production Services Agreement. (Dkt. 6-1, 12.) Vincent Farms maintains its claims arise out of the Schedule of Supplemental Terms; therefore, they are not governed by any forum selection clause. (Dkt. 11.)

In the Production Services Agreement the parties agreed that "[a]ll disputes between the parties arising under or relating to this Agreement shall be heard in the federal courts in Minnesota, or, if such courts are unavailable, in the state courts of Minnesota in Hennepin County." (Dkt. 12-2, Ex. A.) The Production Services Agreement also provides that "[t]his Agreement and the Schedules attached hereto are the complete agreement between the parties" and "[i]n the event of any conflict between the terms of this Agreement and the terms of any Schedule, the terms of this Agreement shall control." (Dkt. 12-2, Ex. A.) The Schedule of Supplemental Terms provides that its terms and conditions are supplemental to the Production Services Agreement. (Dkt. 12-2, Ex. B.)

Vincent Farms asserts that Syngenta breached the express terms of the Schedule of Supplemental Terms by withholding payment of $283,006.08 for the Sugar Hart seed peas provided to Syngenta by falsely claiming that Vincent Farms' seed peas did not meet the 85% germination percentage required. (Dkt. 1-1.) Vincent Farms also asserts that Syngenta was negligent in its preparation of the Sugar Hart seed peas for testing, which resulted in

Syngenta's finding the Sugar Hart seed peas as not meeting the Schedule of Supplemental Terms requirements for germination. (Dkt. 1-1.)

Thus, the Court finds the claims at issue arise out of and relate to the Production Services Contract. The Schedule of Supplemental Terms is not a stand-alone contract. It is a supplement to the Production Services Agreement. Therefore, the claims brought under the Schedule of Supplemental Terms are necessarily brought under the Production Services Agreement.

### B.   Consent

Section 1404(a) grants courts discretion to transfer a civil action to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Here, the parties have consented to the federal courts of Minnesota as the proper forum in the Production Services Agreement. Based on this consent, the Court finds that *Atlantic Marine* controls this case. Thus, the Court should transfer the suit unless Vincent Farms demonstrates "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 134 S.Ct. at 581.

### C.   Extraordinary Circumstances

Where, as here, a valid forum selection clause exists, the Court's analysis of the Motion to Transfer Venue is limited to considering the public interest factors relevant to a *forum non conveniens* inquiry and any other extraordinary circumstances the non-moving party identifies in opposition to the transfer. *Atlantic Marine*, 134 S.Ct. at 581-82. The Court does not consider the plaintiff's choice of forum, private interests, or Idaho's choice-of-law rules. *Id.*   Rather, the public interest factors the Court considers are: the

MEMORANDUM DECISION AND ORDER- 13

administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. *Atlantic Marine*, 143 S.Ct. 581, n. 6 (quoting *Piper Aircraft Co.*, 454 U.S. 241, n. 6).

Vincent Farms argues that this is an Idaho controversy, therefore the public interest is served by having the case heard in Idaho. (Dkt. 11.) Specifically, Vincent Farms asserts that the seed peas that are the crux of the controversy were grown on real property in Idaho and the referee testing laboratory for quality of seed disputes is the Idaho State Seed Laboratory. (Dkt. 11.)

While this may be so, the Court does not find that these facts satisfy Vincent Farms' burden of establishing "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 134 S.Ct. at 581. Vincent Farms agreed to litigate all its claims arising out of the Production Services Agreement, including the Schedule of Supplemental Terms, in Minnesota and has failed to demonstrate any extraordinary circumstances to justify disregarding this knowing and voluntary choice.

## CONCLUSION

The parties agreed at the outset of their relationship that any disputes arising from or related to their Contract would be heard in the federal courts in Minnesota. Plaintiff's claims arise from and relate to that Contract. Therefore, without a showing of extraordinary circumstances, the case shall be transferred to the United States District Court for the District of Minnesota.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1. Syngenta Seed, LLC's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Dkt. 6) is **GRANTED** and this case is transferred to the United States District Court for the District of Minnesota;

2. Plaintiff's Motion to Strike Declaration of Mark Smith in Support of Defendant Syngenta Seeds, LLC's Motion to Transfer Pursuant to 28 U.S.C. §1404(a) (Dkt. 10) is **DENIED;** and

3. Plaintiff's Motion to Strike Declaration of Jose "Joe" Bengochea in Support of Defendant Syngenta Seeds, LLC's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Dkt 14) is **DENIED**.

DATED: January 2, 2018

_____
Edward J. Lodge
United States District Judge